# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEVEN BYERS, #414-073 | * |
| Plaintiff | * |
| v | *   Civil Action No. GLR-16-1661 |
| WARDEN TYRONE CROWDER | * |
| PRISON GUARD MICHAEL G. WILLIAMS | * |
| Defendants | |

***

## MEMORANDUM OPINION

Steven Byers, a Maryland Division of Correction ("DOC") prisoner housed at Eastern Correctional Institution ("ECI") in Westover, Maryland, filed a civil rights complaint under 42 U.S.C. § 1983, seeking money damages against Tyrone Crowder, the former warden of the Maryland Reception Diagnostic Classification Center ("MRDCC"),[1] and Correctional Officer Michael G. Williams. (ECF No. 1). Byers alleges that while he was confined at MRDCC, Defendants were deliberately indifferent to his safety, resulting in an attack on May 29, 2013 in which his cellmate injured him. (Id.). Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), and Byers filed a Response. (ECF No. 21). No hearing is necessary. See Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted.

---

[1] MRDCC, located in Baltimore, is an intake and classification facility that contains prisoners of all custody levels. Those housed there are parole violators or have been assigned to administrative or disciplinary segregation, or are awaiting intake and classification following conviction. See http://www.prisonpro.com/content/maryland-reception-diagnostic-classification-center.

I.      BACKGROUND

Byers alleges that around 9:30 a.m. on May 29, 2013, while Defendant Williams was distributing breakfast trays on the cellblock, Maurice Richardson began arguing with Byers concerning the cleanliness of their cell. (Compl. at 4–5, ECF No. 1). Byers turned to put his tray down and Richardson jumped on his back, biting Byers's head. (Id.). Byers states that Williams did not deploy pepper spray toward Richardson or otherwise attempt to protect Byers. (Id.). Instead, Williams closed the cell door and called for officer assistance. (Id.). As a result, Byers had to defend himself until more officers responded to the incident, and sustained two cuts on his hands in addition to the bite on his scalp. (Id.). Byers was not charged with an institutional infraction as a result of the incident. (ECF No. 21).

Byers states that both men were bleeding, and that Richardson was infected with HIV. (ECF No. 1-1 at 2). Byers suffered emotional distress for a year, until blood tests revealed that he had not been infected by Richardson's blood. (ECF No. 21 at 2; ECF 21-1 at 8 n.1).[2]

It is undisputed that Richardson was assigned to the cell on May 19, 2013 on "house alone" status. (ECF No. 1-1 at 13, Inmate History Report). Inmates are given such a status when they have certain medical conditions and when the safety and security of other inmates is threatened. (ECF No. 21-1 ¶ 8). It is further undisputed, and supported by the findings of the Administrative Law Judge ("ALJ"), that Richardson "had some issues relating to his mental stability" and that "the DOC was aware at the time it assigned . . . Richardson as [Byers'] cell mate that . . . Richardson had exhibited behaviors that made sharing a cell difficult for other inmates." (ECF No. 21-1 at 9). Byers described Richardson as an individual who "cleans his

---

[2] This opinion references the pagination assigned by the court's electronic docketing system.

cell all day," "washing the floors and talking to himself," (ECF No. 16-3 at 4), and asserts that housing him with Richardson amounted to a violation of the Eighth Amendment. (Compl. at 5).

## II. DISCUSSION

### A. Standard of Review

#### 1. Motion to Dismiss

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)) (internal quotation marks omitted), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

#### 2. Motion for Summary Judgment

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Generally speaking, however, "[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 246-47 (4th Cir. 2002) (quoting 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed.1998)). A motion for summary judgment before completion of discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive.

Defendants rely on exhibits attached to their Motion. Because the Court will consider Defendants' exhibits, the Court must convert the Motion to Dismiss to a Motion for Summary judgment.[3]

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976). A verified complaint, however, is the equivalent of an opposing

---

[3] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." Carter v. Balt. Cty., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir.1979). Here, Byers's verified Complaint, which describes the alleged constitutional violations, is based upon his own personal knowledge and Byers swears them under the penalties of perjury. (Compl. at 6). Accordingly, the Court will construe it as an affidavit for purposes of determining whether he generates a dispute of material fact for his claims.

**B.** **Analysis**

    **1.** **Exhaustion of Administrative Remedies**

Defendants argue that Byers failed to exhaust his administrative remedies. Prisoners are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a); see Ross v. Blake, 136 S.Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory, Ross, 136 S.Ct. at 1857, Jones v. Bock, 549 U.S. 199, 219 (2007), and a court may not excuse a failure to exhaust. Ross, 136 S. Ct. at 1856, citing Miller v. French, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: (1) "allow [ ] a prison to address complaints about the program it administers before being subjected to suit"; (2) "reduce[ ] litigation to the extent complaints are satisfactorily resolved"; and (3) prepare a "useful record" in the event of litigation. Jones, 549 U.S. at 219. A prisoner's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he

5

had remedies available to him of which he failed to take advantage. Jones, 549 U.S. at 211–12, 216; Moore, 517 F.3d at 725.

In Ross, the Supreme Court identified three circumstances in which an administrative remedy is unavailable. 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. See Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 § 07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). See Md. Corr. Servs., Code Ann. §§ 10-206, 10-210; COMAR, tit. 12 §§ 07.01.03, 07.01.05B.

Complaints are reviewed preliminarily by the IGO. See Md. Corr. Servs., Code Ann. § 10-207; COMAR, tit. 12 § 07.01.06A. An inmate may submit any grievance to the IGO concerning an official or employee of the Division of Correction (DOC). Md. Code Ann. Corr.

Servs. §10-206(a). If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. § 10-207(b)(1); COMAR, tit. 12 § 07.01.07B. The order of dismissal constitutes the final decision of the Secretary of the Department of Public Safety and Correctional Services (DCPCS) for purposes of judicial review. Md. Corr. Servs., Code Ann. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. See Md. Cts. & Jud. Proc., Code Ann. § 10-208(c); COMAR tit. 12 § 07.01.07-.08. The conduct of such hearings is governed by statute. See Md. Corr. Servs., Code Ann. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within 15 days after receipt of the proposed decision of the ALJ. See Md. Corr. Servs., Code Ann. § 10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies. See Md. Corr. Servs., Code Ann. § 10-210. A prisoner need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."). The ARP process does not apply to complaints

7

concerning rape, sexual assault, sexual harassment, sexual abuse and sexual misconduct. OPS.185.0002.(05)(F).[4]

Byers has shown that his ARP complaint was initially dismissed by the ARP Coordinator at NBCI. (ECF No. 21-1 at 2–3). Byers provides the record of proceedings before the ALJ, who analyzed whether DOC personnel intentionally or negligently allowed Byers to be injured by Richardson. (See id.). The Court, therefore, concludes that Byers exhausted his administrative remedies, permitting the Court to consider his claims.

### 2. Supervisory Liability

Byers names Crowder based on his supervisory status while Crowder was the Warden at MRDCC. In the Fourth Circuit, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. Love-Lane v. Martin, 355 F. 3d 766, 782 (4th Cir. 2004). Liability of supervisory officials is not based on ordinary principles of respondeat superior, but on the basis that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care. Baynard v. Malone, 268 F. 3d 228, 235 (4th Cir. 2001), citing Slakan v. Porter, 737 F. 2d 368, 372 (4th Cir. 1984).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an

---

[4] The court notes OPS.185.0002 is an Executive Directive issued by the DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive"). The Directive was submitted as exhibit ECF-16-2 in Payton v. Bishop, ELH-15-3648 (D. Md.).

8

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F. 3d 791, 799 (4th Cir. 1994).

Byers does not allege that Crowder was, in any manner, personally involved in the decision to house him with Richards, or that Crowder knew or should have known that Richardson had a propensity to act violently towards a cellmate. (See Compl.). Because Byers does not satisfy the elements for conferring supervisory liability upon Crowder, the Court will dismiss Byers' claims against Crowder.

### 3. Failure to Protect from Violence

Byers alleges that Defendants failed to protect him from Richardson in violation of the Eighth Amendment to the United States Constitution. In order to prevail on an Eighth Amendment claim of failure to protect from violence, Byers must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. See Pressly v. Hutto, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement," however, "unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, see also Rich v. Bruce, 129 F. 3d 336, 339–40 (4th Cir. 1997). Unless a prison official actually makes this inference, he does not act with deliberate indifference even

9

where his actions violate prison regulations or can be described as stupid or lazy. Rich, 129 F.3d at 339–40.

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016) (citing Farmer 511 U.S. at 825). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" Id. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. See Raynor, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. Danser v. Stansberry, 772 F.3d 340, 346 – 47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993).

Subjectively, a prisoner must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. Id. at 837. A prisoner may "prove an official's actual knowledge

of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Raynor, 817 F.3d at 128.

Actual knowledge of a substantial risk alone does not impose liability. Where prison officials respond reasonably to a risk, they may be found free of liability. Farmer, 511 U.S. at 844. For example, in Winfield v. Bass, the Fourth Circuit held that correctional officers respond reasonably if, when an inmate begins attacking another, the correctional officers present "began immediate preparations to safely intervene" as soon as they became aware of the risk, such as radioing for assistance instantly. 106 F.3d. 525, 532 (4th Cir. 1999). Failure to take any action in an ongoing assault, however, can amount to deliberate indifference. See id.

Here, Byers received a relatively minor injury as a result of the incident, but required ongoing HIV testing for a year as a result of the bite to his scalp. (Compl. at 4–5; ECF No. 21-1 at 8 n.10). Assuming arguendo that the first element is met, the Court concludes Byers's claims do not meet the second element.

Williams was present when Richardson stated he did not want Byers as his cellmate because Byers did not keep the cell clean, when Byers responded he "wasn't going anywhere," and when Richardson shoved Byers. At that point, Williams radioed for assistance, which arrived "within a minute or two," ending the altercation. (ECF No. 16-2 ¶ 3). Byers argues that Williams' failure to use his pepper spray allowed the altercation to "continue and even escalate" to a level unreasonable under the Eighth Amendment. (Compl. at 5). While the failure to take any action in an ongoing assault can amount to deliberate indifference, see Winfield, 106 F.3d at 532, such circumstances are not shown here. Williams took action by calling for assistance after

11

Richardson shoved Byers.[5] Thus, the Court concludes that Williams' choice of action—radioing for assistance rather than using pepper spray—does not meet the second element required for liability for failure to protect.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 16) is GRANTED. A separate Order follows.

Entered this 7th day of June, 2017          /s/
                                                         George L. Russell, III
                                                         United States District Judge

---

[5] The Court need not address whether Byers or any other prisoner should have been assigned to a cell with Richardson, who was on "house alone" status, because as stated above, Byers does not allege that Crowder or Williams were involved personally in the decision to house Byers with Richards. (See Compl.).